UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSE J. SHOMO,

                Plaintiff,

           -against-

STATE OF NEW YORK DEPARTMENT OF
CORRECTIONS AND COMMUNITY
SUPERVISION, et al.,

                Defendants.

**MEMORANDUM OPINION
AND ORDER**

21-CV-00128 (PMH)

PHILIP M. HALPERN, United States District Judge:

Jose Shomo ("Plaintiff"), currently incarcerated at Fishkill Correctional Facility ("Fishkill"), proceeding *pro se* and *in forma pauperis* ("IFP"), brings this action under 42 U.S.C. § 1983, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*., and the Rehabilitation Act of 1973 ("Rehabilitation Act"), 42 U.S.C. § 701, *et seq*., alleging that the New York State Department of Corrections and Community Supervision ("DOCCS"), Acting DOCCS Commissioner Anthony Annucci ("Annucci"), Chief DOCCS Medical Officer Dr. John Morley ("Morley"), and Dr. Gaetan Zamilus ("Zamilus," and collectively "Defendants") were deliberately indifferent to his medical condition and denied him medical treatment. (Doc. 2, "Compl.").

Plaintiff commenced this action on January 7, 2021 and sought: (i) class action status; (ii) convening of a three-judge panel; (iii) appointment of pro bono counsel; and (iv) equitable relief. (*Id*. ¶ 2). After filing the Complaint and before any response was filed, Plaintiff filed various letters raising new and distinct issues unrelated to his claims in the case. (Docs. 16-18, 24, 27-28, 37, 43-44). On October 7, 2021, the Court denied Plaintiff's requests and advised that such complaints are better raised through the administrative grievance process at the prison. (Doc. 50). After additional attempts to raise new, unrelated issues via letter, the Court issued an Order on October

28, 2021 warning Plaintiff that it "need not, and will not, consider any more letters filed by Plaintiff pertaining to issues that do not relate to the claims in this case" and that "[t]o the extent Plaintiff believes he is entitled to relief for injuries unrelated to [the] case, he may . . . address them through the administrative grievance process." (Doc. 59).

Defendants filed a motion to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6) and 28 U.S.C. § 1915(g) on November 19, 2021. (Doc. 62; Doc. 63, "Def. Br."). The motion and accompanying memorandum were served on the Plaintiff on November 19, 2021. (Doc. 62-1). Plaintiff's opposition to Defendants' motion was due December 20, 2021. (Doc. 55). Plaintiff failed to file any opposition and, on January 5, 2022, Defendants wrote the Court requesting that their motion to dismiss be deemed fully submitted. (Doc. 66). On January 6, 2022, the Court denied Defendants' request and *sua sponte* extended the deadline for Plaintiff's opposition to February 4, 2022. (Doc. 67). The Court granted two additional requests by Plaintiff to extend the time to file opposition papers, with the eventual deadline set for February 25, 2022— nearly three months past Plaintiff's original deadline (Docs. 70, 74). Plaintiff again failed to file any opposition, and, on March 11, 2022, Defendants again requested that their motion to dismiss to be deemed fully briefed. (Doc. 76). The Court granted that request and deemed Defendants' motion to dismiss fully submitted and unopposed by Order entered on March 14, 2022. (Doc. 77).

Despite Plaintiff's failure to oppose Defendants' motion, he wrote to the Court to request a telephone conference and sought an order directing Defendants to preserve certain video footage from December 21, 2021 to present, long after the events at issue in this case took place. (Doc. 79). The Court denied these requests. (Docs. 80, 83).

For the reasons set forth below, Defendants' motion to dismiss is GRANTED.

**BACKGROUND**

I.     Incarceration and Medical Treatment History

Plaintiff has been housed at various correctional institutions since 1994. (Compl. ¶ 18). Plaintiff was transferred to DOCCS' custody in 2001 when he was processed at Downstate Correctional Facility. (*Id*. ¶ 22). Subsequently, he was housed at Sullivan Correctional Facility (*id*. ¶ 29), Coxsackie Regional Medical Unit (*id*. ¶ 30), Mohawk Correctional Facility/Walsh Regional Medical Unit (*id*. ¶ 34), Wende Correctional Facility (*id*. ¶ 38), Central New York Psychiatric Center (*id*. ¶ 42), Clinton Correctional Facility (*id*. ¶ 52), and currently, Fishkill (*id*. ¶ 90). During his incarceration at these various DOCCS facilities, Plaintiff alleges he received specific examinations by medical specialists on at least five occasions: (i) On October 18, 2002, by Dr. Mark Dentinger at Albany Medical Center (*id*. ¶ 32); (ii) in mid-2004 by Dr. Richard Cowen while at Wende Correctional Facility (*id*. ¶ 40); (iii) at an unspecified time in 2006 or 2007 by Dr. Stanley Bukowski and Dr. Mary Clemens while at Wende Correctional Facility (*id*. ¶ 49); (iv) at an unspecified time after 2010 by Dr. Michael Salvana at Walsh Regional Medical Unit (*id*. ¶¶ 58-64); and (v) in "August or September 2018" by Dr. Jin at SUNY Upstate Hospital (*id*. ¶ 65). Plaintiff also alleges that he was housed in at least four medical facilities for significant periods of time while in DOCCS' custody, including: (i) from October 2002 to July 2004 at Walsh Regional Medical Unit (*id*. ¶¶ 32-34); (ii) from December 13, 2005 to December 29, 2005 at Central New York Psychiatric Center (*id*. ¶ 42); (iii) from April 2007 to January 2010 at the Clinton Correctional Facility Infirmary (*id*. ¶ 55); and (iv) for an unspecified amount of time between 2010 and 2018 at Walsh Regional Medical Unit (*id*. ¶¶ 55-64).

Plaintiff alleges that while he was incarcerated at Rikers Island, a New York City Correctional Facility, various incidents between October 24, 1994 and October 7, 1999, rendered him a quadriplegic. (*Id*. ¶¶ 18-21). Plaintiff also alleges that he suffers from "stomach ulcers and

3

hiatal hernia," (*id*. ¶ 71) and "Ineffective Esophageal Dysmotility" ("IED") due to excessive vomiting (*id*. ¶ 77). Plaintiff alleges that IED could cause him to involuntarily vomit and that this could become fatal by causing choking. (*Id*. ¶ 78). Lastly, Plaintiff alleges that he has a history of deep vein thrombosis and pulmonary embolism. (*Id*. ¶ 100). As to each of these three forms of ailment—spinal, esophageal, and cardiovascular—Plaintiff purports to have requested, and been denied, various forms of treatment. (*See generally, id*.)

First, Plaintiff alleges that he was denied handfeeding at Walsh Regional Medical Unit from 2004 to 2006, the subject of two prior lawsuits in the Northern District of New York. (*Id*. ¶¶ 34-35).[1] Plaintiff also alleges that, after his transfer to Wende Correctional Facility, Dr. Richard Cowen could not find anything wrong with him, so he was denied assistance with Activities of Daily Living ("ADLs"). (Compl. ¶ 41). Plaintiff alleges that after Dr. Stanley Bukowski and Dr. Mary Clemens determined that the results of his diagnostic tests were unremarkable and that there was no medical reason preventing him from using his arms, his complaints of "dizziness, loss of balance, legs feeling weak, excruciating neck pains, vomiting and nausea" were ignored. (*Id*. ¶¶ 48-49). Plaintiff alleges that from 2007 to 2010 at the Clinton Correctional Facility, he was refused assistance with ADLs altogether. (*Id*. ¶ 55).

Second, Plaintiff alleges that throughout the entire 21 years he had been in DOCCS' custody before filing the instant lawsuit, he requested a basin to vomit in, which was denied. (*Id*. ¶¶ 69-70). Plaintiff also alleges that, because of his IED, he "is in need of a higher level of care th[a]n DOCCS can provide," needs "stricter monitoring," and needs to be transferred to a Forensic Prison Ward. (*Id*. ¶¶ 79-80). Plaintiff also alleges that he requires, per recommendation from Dr.

---

[1] As Defendants point out, at least one of the suits identified in the Complaint was dismissed on grounds that Defendants allege constitute a strike toward Plaintiff's IFP status. (Def. Br. at 8 (citing Compl. ¶ 35)).

Michael Salvana, to either have his door left unlocked or for his disciplinary sanctions to be converted to loss of recreation. (*Id*. ¶ 87). Next, Plaintiff alleges that his vomiting is not properly monitored and that he and Dr. Salvana wrote to Morley requesting a call bell, but that a call bell would not allow him "in any academic way" to summon help. (*Id*. ¶¶ 91-95). Lastly, Plaintiff alleges that because of his IED, he requested the head of his bed to be raised, but was denied by DOCCS staff "out of anger." (*Id*. ¶ 96).

Third, Plaintiff alleges that he requires, as ordered by Albany Medical Center staff at an unspecified time, semi-annual Venous Sonogram testing for his cardiovascular ailments, which has been denied since July 2017. (*Id*. ¶¶ 101-02). Plaintiff also alleges that his condition requires compression stockings, range of motion exercise, sequential compression device treatment, and reposition every two hours—all of which DOCCS has refused to provide. (*Id*. ¶¶ 102-03). Lastly, Plaintiff alleges that he requires physical/occupational therapy and muscle stimulation 2-3 times weekly, which DOCCS has not provided since December 2019. (*Id*. ¶¶ 104-08).

II.   <u>Medical Record-Keeping</u>

Plaintiff's next category of qualms with his time in custody at DOCCS relates to that agency's alleged failure to preserve his medical records. Plaintiff alleges that he presented his past medical records to DOCCS upon his initial intake at Downstate Correctional Facility. (*Id*. ¶ 23). Plaintiff then alleges that during his two weeks at Central New York Psychiatric Center, there were "no records to be found" explaining why he could not use his arms. (*Id*. ¶ 44). Plaintiff contends that his doctors at Wende Correctional Facility, Dr. Stanley Bukowski and Dr. Mary Clemens, "refused to simply comb" his records despite requests to do so. (*Id*. ¶¶ 50-51). Plaintiff next alleges that from 2007 to 2010 at the Clinton Correction Facility Infirmary, "DOCCS employees either intentionally or inadvertently refused to consult Mr. Shomo's old records." (*Id*. ¶ 56). Plaintiff

claims that this refusal to consult his past records led doctors to continually misdiagnose and deny assistance to him until Dr. Michael Salvana at Walsh Regional Medical Unit noticed "vomit in a basin" at Mr. Shomo's bedside table, consulted his medical records, and determined they were heavily "disorganized." (*Id*. ¶¶ 58-63). Plaintiff alleges that he received 210 Tier II and Tier III misbehavior reports between 2012 and 2020 because DOCCS staff was unable to prove that he suffered from a condition which would cause him to vomit. (*Id*. ¶ 72). Plaintiff also states that "[a]bsent these false reports, [he] would have qualified for medical parole in 2012." (*Id*. ¶ 188). Lastly, Plaintiff alleges that he was denied treatment and assistance for 21 years because of "tardy" record keeping. (*Id*. ¶ 69).

### III.   COVID-19

The final category of Plaintiff's allegations relate to COVID-19 and DOCCS' ability—or, more precisely, its lack thereof—to control the spread of that disease. Plaintiff alleges that, because of the design of DOCCS facilities, prisons have become "hot beds" for infection. (*Id*. ¶ 133). As a result, Plaintiff claims that a 50% reduction in the current population of prisons is required statewide. (*Id*. ¶ 149).

### **STANDARD OF REVIEW**

A Rule 12(b)(6) motion enables a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is

6

not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556). The factual allegations pled "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555. "When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the Court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). The presumption of truth, however, "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678 (alteration in original)). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

A complaint submitted by a *pro se* plaintiff, "however inartfully ple[d], must be held to less stringent standards than formal pleadings drafted by lawyers . . . ." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (internal quotation marks omitted). Because *pro se* plaintiffs "'are often unfamiliar with the formalities of pleading requirements,' courts must 'apply a more flexible standard in determining the sufficiency of a *pro se* [complaint] than they would in reviewing a pleading submitted by counsel.'" *Smith v. U.S. Dep't of Just.*, 218 F. Supp. 2d 357, 361 (W.D.N.Y. 2002) (quoting *Platsky v. Cent. Intell. Agency*, 953 F.2d 26, 28 (2d Cir. 1991)).

However, while "[p]ro se complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal*," dismissal is "appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." *Thomas v. Westchester Cty.*, No. 12-CV-06718, 2013 WL 3357171, at *2 (S.D.N.Y. July 3, 2013) (internal citations omitted); *see also*

*Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) ("Even in a *pro se* case . . . although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks omitted)). Therefore, while the Court must "draw the most favorable inferences that [a plaintiff's] complaint supports, [it] cannot invent factual allegations that [a plaintiff] has not pled." *Chappius*, 618 F.3d at 170. The Court does, however, have a duty to interpret "the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

The special solicitude due a *pro se* litigant, however, depends upon that particular party's litigation experience, as "the degree of solicitude may be lessened where the particular *pro se* litigant is experienced in litigation and familiar with the procedural setting presented." *Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010). Judge Khan, in one of Plaintiff's prior cases, *Shomo v. New York Dep't of Corr. Servs.*, observed that Plaintiff was an "experienced *pro se* litigant," and that granting him the same solicitude due an inexperienced *pro se* litigant "would tilt the scales of justice unfairly in favor of [Plaintiff] and against his opponents.". No. 04-CV-00910, 2007 WL 2580509, at *3 (N.D.N.Y. Sept. 4, 2007).  Plaintiff cites to this case in the Complaint as one of two lawsuits that he filed due to the lack of handfeedings at Coxsackie Correctional Facility and Walsh Regional Medical Unit. (Compl. ¶ 35). At that time, "Plaintiff ha[d] filed at least 10 other federal and state court actions and appeals" and "[e]ight of those actions or appeals involved claims of torts or civil rights violations arising from the conditions of his imprisonment." *Shomo*, 2007 WL 2580509, at *3. Since then, Plaintiff has continued to file lawsuits. As of July 2020, Plaintiff was "currently litigating at least two Section 1983 claims" and was deemed "an extremely litigious

inmate who [wa]s quite familiar with the legal system and with pleading requirements" by Judge Briccetti. *Shomo v. Furco*, No. 18-CV-8523, 2020 WL 4194941, at *4 (S.D.N.Y. July 20, 2020). The Court sees no reason for Plaintiff to now, only two years later, be granted special solicitude, as the only relevant event in his litigation history since his solicitude was last revoked was the filing of the instant lawsuit.

Moreover, when deciding an unopposed motion to dismiss (as is the case here with respect to Defendants' motion), "the Court is to 'assume the truth of a pleading's factual allegations and test only its legal sufficiency. Thus, although a party is to be given a reasonable opportunity to respond to an opponent's motion, the sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law.'" *Law v. Corizon Med. Servs.*, No. 13-CV-05286, 2014 WL 2111675, at *3 (S.D.N.Y. May 12, 2014) (quoting *McCall v. Pataki*, 232 F.3d 321, 322-23 (2d Cir. 2000)). It is, therefore, appropriate for the Court to test the sufficiency of the Complaint even without the benefit of formal opposition to the motion.

## ANALYSIS

Defendants move to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6) and pursuant to 28 U.S.C. § 1915(g). (Doc. 62).[2] They argue that the Complaint ought to be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted because the pleading: (i) is barred by the Eleventh Amendment; (ii) fails to allege any personal involvement on the parts of Annucci, Morley, or Zamilus (collectively,

---

[2] Defendants also argue that Plaintiff has at least "four strikes" under § 1915(g), meaning that he had filed actions on at least four prior occasions that were dismissed on the grounds that they were frivolous, malicious, or failed to state a claim, and that Plaintiff's IFP status therefore ought to be revoked and the Complaint dismissed. (Def. Br. at 7). The Court need not rule on this branch of Defendants motion for the reasons set forth *infra*.

"Individual Defendants"); (iii) fails to plausibly allege deliberate indifference to Plaintiff's health

or safety; (iv) is devoid of facts establishing deliberate indifference to the risk of COVID-19; (v)

does not state adequately ADA or Rehabilitation Act claims; and (vi) the Individual Defendants

are entitled to qualified immunity. (Def. Br. at 1-2).

These arguments will be addressed *seriatim* herein.

I.      Eleventh Amendment Immunity

Defendants argue that Plaintiff's claims against DOCCS under 42 U.S.C § 1983 and the

ADA are barred by the doctrine of sovereign immunity.[3]

The Eleventh Amendment directs that "[t]he Judicial power of the United States shall not

be construed to extend to any suit in law or equity, commenced or prosecuted against one of the

United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S.

Const. amend. XI. "The immunity recognized by the Eleventh Amendment extends beyond the

states themselves to 'state agents and state instrumentalities' that are, effectively, arms of a state."

*Woods v. Rondout Valley Centr. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006) (citing

---

[3] Whether such immunity argument is properly brought under Rule 12(b)(1) or 12(b)(6) is an unsettled question of law in this Circuit. *Ripa v. Stony Brook Univ.*, 808 F. App'x 50, 51 n.1 (2d Cir. 2020) ("Whether Eleventh Amendment immunity 'constitutes a true issue of subject matter jurisdiction or is more appropriately viewed as an affirmative defense' has not yet been decided by the Supreme Court or [the Second Circuit]." (quoting *Carver v. Nassau Cty. Interim Fin. Auth.*, 730 F.3d 150, 156 (2d Cir. 2013))). Defendants specifically invoke Rule 12(b)(6) as the only grounds for dismissal under the Federal Rules of Civil Procedure in their notice of motion, but assert in the accompanying memorandum that "[t]he Court thus lack[s] *subject matter jurisdiction* over Plaintiff's claims against DOCCS under Section 1983 and the ADA." (Doc. 62; Def. Br. at 15 (emphasis added)). Nonetheless, the "distinction has no practical effect" in this case, because whether brought under either subdivision, the Court considers on this motion "only the pleadings and the relevant state and federal law and has drawn all inferences in Plaintiff's favor." *Harrison v. New York*, 95 F. Supp. 3d 293, 313 (E.D.N.Y. 2015) (quoting *Tiraco v. New York State Bd. of Elections*, 963 F. Supp. 2d 184, 191 n.6 (E.D.N.Y. 2013)). When a defendant seeks dismissal under Rule 12(b)(1) "as well as on other grounds, the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." *Saint-Amour v. Richmond Org., Inc.*, 388 F. Supp. 3d 277, 286 (S.D.N.Y. 2019) (quoting *United States v. New York City Dep't of Hous., Pres. & Dev.*, No. 09-CV-06547, 2012 WL 4017338, at *3 (S.D.N.Y. Sept. 10, 2012)).

*Regents of the Univ. of Cal. v. Doe,* 519 U.S. 425, 429 (1997)); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). DOCCS qualifies as an instrumentality of the state, ordinarily immune from suit. *Elbert v. New York State Dep't of Corr. Servs*., 751 F. Supp. 2d 590, 594 (S.D.N.Y. 2010).

"[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity when acting pursuant to its authority under Section 5 of the Fourteenth Amendment." *Nelkenbaum v. Jordy*, No. 19-CV-07953, 2020 WL 7630354, at *2 (S.D.N.Y. Dec. 22, 2020) (quoting *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (alteration in original)). To that point, it is well-settled that "New York has not waived its sovereign immunity in § 1983 lawsuits, nor has Congress abrogated the State's immunity." *Phillips v. New York*, No. 13-CV-00927, 2013 WL 5703629, at *3 (N.D.N.Y. Oct. 17, 2013) (citing *Vincent v. Yelich*, 718 F.3d 157, 177 (2d Cir. 2013)); *see also Keitt v. New York City*, 882 F. Supp. 2d 412, 424 (S.D.N.Y. 2011) ("Magistrate Judge Freeman properly concluded that Keitt's Section 1983, 1985, and 1986 claims against the State of New York and its agencies are barred by the [Eleventh] Amendment."). Section 1983 does not, without more, abrogate sovereign immunity. *Will*, 491 U.S. at 66-68.

Nor has the ADA abrogated New York's sovereign immunity, except to the extent that there is also an underlying violation of the Fourteenth Amendment. *Id*. at 66; *see also United States v. Georgia*, 546 U.S. 151, 158 (2006) ("[I]nsofar as Title II [of the ADA] creates a private cause of action for damages against the States for conduct *that actually violates the Fourteenth Amendment*, Title II validly abrogates state sovereign immunity." (emphasis added)). Thus, a plaintiff may only bring an ADA claim against a state when the violation either "was motivated by discriminatory animus or ill will based on the plaintiff's disability" or was "of a fundamental

11

right." *Garcia v. S.U.N.Y. Health Sciences Ctr. of Brooklyn*, 280 F.3d 98, 111 (2d Cir. 2001); *see also Felix v. City of New York*, 344 F. Supp. 3d 644, 665 (S.D.N.Y. 2018) ("'[D]iscriminatory animus or ill will based on the plaintiff's disability' is required in order to subject states and state entities to liability in a manner consistent with state sovereign immunity and Congress's enforcement authority under Section 5 of the Fourteenth Amendment." (quoting *Garcia*, 344 F. Supp. 3d. at 112)). Plaintiff does not allege that Defendants acted with discriminatory animus or ill will based on his disability. However, Plaintiff does *raise* allegations that a fundamental right was violated under the Eighth Amendment. *See Louisiana ex rel. Francis v. Resweber*, 329 U.S. 459 (1947) (explaining the Due Process Clause of the Fourteenth Amendment incorporates the Eighth Amendment's guarantee against cruel and unusual punishment). Nevertheless, as discussed *infra*, Plaintiff's Eighth Amendment claims fail. Therefore, DOCCS is entitled to sovereign immunity under the Eleventh Amendment and Plaintiff's claims against that entity under § 1983 and the ADA are barred. Accordingly, all three of Plaintiff's claims, which relate to: (i) deliberate indifference to medical needs; (ii) misbehavior reports; and (iii) COVID-19 protections, are dismissed against DOCCS.

## II.   Prerequisite of Personal Involvement Under § 1983

With respect to Plaintiffs constitutional claims brought under § 1983, Defendants argue that the Complaint does not adequately allege personal involvement by the Individual Defendants, and that the claims against them should therefore be dismissed. (Def. Br. at 13-14). The Court agrees. As a fundamental prerequisite "[t]o establish[ing] a § 1983 claim, a plaintiff must show the defendants' personal involvement in the alleged constitutional violation." *Boley v. Durets*, 687 F. App'x 40, 41 (2d Cir. 2017) (citing *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)). Failing to allege that a defendant was personally involved in, or responsible for, the conduct complained

of renders a complaint "fatally defective on its face." *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 886 (2d Cir. 1987) (internal quotation marks omitted). Simply being a supervisor is not enough to impute personal involvement onto a defendant; liability exists only where the "defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676). The Complaint fails to implicate the Individual Defendants in any alleged constitutional violation. "[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Shomo v. City of New York*, 579 F.3d 176, 184 (2d Cir. 2009) (citation omitted).

Plaintiff makes no factual allegation against Annucci aside from his status as a DOCCS executive and that he refused to transfer Plaintiff into a Prison Hospital Ward. (Compl. ¶¶ 80, 207). As for Morley, Plaintiff repeats the allegations made against Annucci, and adds that Plaintiff wrote to Morley seeking a call bell, which Plaintiff admits would be useless. (*Id*. ¶¶ 94-95). Plaintiff's only additional allegation as to Zamilus is that he is his "attending physician." (*Id*. ¶ 94). In fact, the Complaint at paragraphs 80, 94, and 207 contain all of Plaintiff's conclusory allegations as to the Individual Defendants and do not establish the personal involvement necessary to state a claim for relief against any of them under 42 U.S.C. § 1983.

Plaintiff's allegations that the Individual Defendants held certain positions within DOCCS and denied his grievances are simply insufficient. *See Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016) ("[A] defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority." (internal quotation marks omitted)); *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997) (commissioner's receipt of letters from an inmate insufficient to establish personal involvement); *McIntosh v. United States*, No. 14-CV-07889, 2016 WL 1274585, at *16 (S.D.N.Y. Mar. 31, 2016) ("[M]ere receipt of a complaint or

13

grievance from an inmate is insufficient to establish personal involvement . . . ."); *Malik v. City of New York*, No. 11-CV-06062, 2012 WL 3345317, at *15 (S.D.N.Y. Aug. 15, 2012) ("The only factual basis for this allegation, however, is that Malik wrote . . . Argo . . . regarding his grievances. This allegation is insufficient to make out a *prima facie* claim of personal involvement . . . ." (internal citations omitted)); *Mateo v. Fischer*, 682 F. Supp. 2d 423, 430 (S.D.N.Y. 2010) ("Courts in this circuit have said that the receipt of letters or grievances, by itself, does not amount to personal involvement."); *Higgins v. Artuz*, No. 94-CV-04810, 1997 WL 466505, at *7 (S.D.N.Y. Aug. 14, 1997) (Sotomayor, J.) ("[I]t is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations." (internal quotation marks omitted)).

Plaintiff similarly fails to allege that the Individual Defendants were personally involved in the allegedly deficient COVID-19 protocols. *See Gil-Cabrera v. Dep't of Corr.*, No. 20-CV-09493, 2021 WL 5282620, at *4 (S.D.N.Y. Sept. 27, 2021) (dismissing § 1983 claims against prison supervisors alleging deliberate indifference to serious risk of contracting COVID-19 when complaint lacked facts about how supervisory officials were personally involved in alleged violations), *adopted by* 2021 WL 5910055 (S.D.N.Y. Dec. 14, 2021); *Gibson v. State of New York*, No. 21-CV-04251, 2021 WL 4267683 (S.D.N.Y. Sept. 20, 2021) (same); *Rose v. City of New York Dep't of Corr.*, No. 21-CV-03164, 2021 WL 3271830, at *2 (S.D.N.Y. July 30, 2021) (same). While Plaintiff claims that DOCCS' protocols to combat the COVID-19 pandemic were inadequate, he fails to allege the role any Individual Defendant had in them. The Individual Defendants' supervisory positions are insufficient, without more, to establish personal involvement. *Victory*, 814 F.3d at 67.

Plaintiff's § 1983 claims for relief pressed against the Individual Defendants are, accordingly, dismissed for lack of personal involvement.

III.    Failure to State a Claim Under Section 1983

Even assuming that the Eleventh Amendment did not bar Plaintiff's claims against DOCCS and that personal involvement was adequately plead as to the Individual Defendants, Plaintiff's constitutional claims still fail to meet the plausibility test imposed by *Iqbal, Twombly*, and their progeny.

Plaintiff's Eighth Amendment claims are brought under 42 U.S.C. § 1983.[4] That section provides, in pertinent part, that "[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. "[T]his language . . . creates a mechanism by which individuals can vindicate the violation of rights secured elsewhere." *Linares v. Annucci*, No. 19-CV-11120, 2021 WL 2689736, at *6 (S.D.N.Y. June 30, 2021) (quoting *Santucci v. Levine*, No. 17-CV-10204, 2021 WL 76337, at *3 (S.D.N.Y. Jan. 8, 2021) (first alteration in original)). "In a case where a prisoner is suing prison officials based on their deprivation of rights, Section 1983 serves a dual purpose: first, to deter prison officials, acting as state actors, from using their authority to deprive prisoners of their constitutional rights, and second, to provide relief to prisoners when necessary." *Keyes v. Venettozzi*, No. 18-CV-00372, 2022 WL 991402, at *4 (N.D.N.Y. Mar. 31, 2022) (citing *Wyatt v. Cole*, 504 U.S. 158, 161 (1992)).

---

[4] Plaintiff also brings a "constitutional" claim relating to the preservation of his medical records, but does not specify the provision of the Constitution under which this claim is made. Nonetheless, the Court addresses this argument *infra*, following its discussion on Plaintiff's claims specific to Eighth Amendment.

The Eighth Amendment instructs that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted," U.S. Const. amend. VIII, and the Supreme Court has explained that the Eighth Amendment requires that prison officials "provide humane conditions of confinement," which include making sure "that inmates receive adequate food, clothing, shelter, and medical care . . . ." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Accordingly, prison officials must, *inter alia*, "take reasonable measures to guarantee the safety of inmates in their custody." *Rennalls v. Alfredo*, No. 12-CV-05300, 2015 WL 5730332, at *3 (S.D.N.Y. Sept. 30, 2015) (quoting *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996)); *see also Rembert v. Cheverko*, No. 12-CV-09196, 2014 WL 3384629, at *5 (S.D.N.Y. July 10, 2014) (quoting *Farmer*, 511 U.S. at 832-33); *Randle v. Alexander*, 960 F. Supp. 2d 457, 471 (S.D.N.Y. 2013).

Plaintiff presents two factual predicates for his Eighth Amendment claims: (i) that Defendants were deliberately indifferent to his medical needs; and (ii) Defendants failed to protect him from the risk of COVID-19.

### A. Deliberate Indifference to Serious Medical Needs

Plaintiff alleges that he suffers serious medical ailments of three varieties—spinal, esophageal, and cardiovascular—and that he has been denied various treatments for each.

The Eighth Amendment "imposes a duty upon prison officials to ensure that inmates receive adequate medical care." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006) (citing *Farmer*, 511 U.S. at 832, 844). "In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [] serious medical needs.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Estelle*, 429 U.S. at 104 (alteration in original)). "A plaintiff can prevail on a deliberate indifference

to medical needs claim under the Eighth Amendment by satisfying a two-prong test." *Sutton v. Rodriguez*, No. 18-CV-01042, 2020 WL 5504312, at *4 (S.D.N.Y. Sept. 8, 2020). Generally, as explained by this Court previously:

> [t]he first prong is objective and requires that the alleged deprivation in medical care be sufficiently serious. A deprivation in medical care is sufficiently serious if (1) the prisoner was actually deprived of adequate medical care and (2) the inadequacy in medical care is sufficiently serious. The latter inquiry contemplates a condition of urgency that may result in degeneration or extreme pain.
>
> . . . .
>
> The second prong of the deliberate indifference test under the Eighth Amendment is subjective and requires that the plaintiff demonstrate that the defendant had a sufficiently culpable state of mind. A defendant had a sufficiently culpable state of mind if he acted or failed to act while actually aware of a substantial risk that serious inmate harm will result.

*Id*. at *4-5 (internal citations and quotation marks omitted).

This test exists with a caveat: "a prisoner is not entitled to the best healthcare possible or even to a choice among available treatment modalities." *Robinson v. Wolf-Friedman*, No. 18-CV-02409, 2019 WL 4640236, at *6 (S.D.N.Y. Sept. 24, 2019) (internal quotation marks omitted). "Indeed, prison officials and medical officers have wide discretion in treating prisoners, and Section 1983 is not designed to permit federal courts to interfere in the ordinary medical practices of state prisons." *Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 311 (S.D.N.Y. 2001). "If a prisoner's course of treatment is one about which reasonable doctors could disagree, an Eighth Amendment claim will not ordinarily lie." *Dichiara v. Pataki*, No. 06-CV-06123, 2007 WL 749742, at *3 (E.D.N.Y. Mar. 7, 2007); *see also Sonds*, 151 F. Supp. 2d at 311 ("A difference of opinion between a prisoner and prison officials regarding medical treatment does not, as a matter of law, constitute deliberate indifference.").

i.   The Objective Prong

The first prong, the "objective prong," requires facts establishing that Plaintiff was "incarcerated under conditions posing a substantial risk of serious harm." *Morgan v. Dzurenda*, 956 F.3d 84, 89 (2d Cir. 2020) (internal quotation marks omitted). Where, as here, "a plaintiff acknowledges that he received some medical care related to the underlying condition, but that the care he received was inadequate, 'the seriousness inquiry focus[es] on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone.'" *Boomer v. Bentivegna*, No. 19-CV-04754, 2021 WL 1163658, at *3 (S.D.N.Y. Mar. 26, 2021) (quoting *Salahuddin*, 467 F.3d at 280). Here, Plaintiff alleges not only that he received "some" medical care, but that he received examinations from at least five different specialists and was placed in medical housing facilities for significant periods of time on at least four occasions. (Compl. ¶¶ 18, 22, 30, 32-34, 38, 40, 42, 49-52, 55-64, 65, 90). Plaintiff also alleges that he was seen by "20 different [non-DOCCS] specialists from 5 different specialty clinics." (*Id*. ¶ 203). "The seriousness of a delay in medical treatment may be decided 'by reference to the *effect* of delay in treatment . . . . [c]onsequently, delay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for delay.'" *Smith v. Carpenter*, 316 F.3d 178, 186 (2d Cir. 2003) (quoting *Chance*, 143 F.3d at 702 (emphasis in original)).

Plaintiff's allegations fall apart at this first inquiry.

With respect to Plaintiff's quadriplegia, the treatments alleged to have been denied all relate to his ADLs and Plaintiff makes no allegation that lack of handfeeding or lack of any other ADL assistance had any impact on his medical condition. Plaintiff's only other challenge involving his alleged quadriplegia relates to his complaints of "dizziness, loss of balance, legs feeling weak,

excruciating neck pains, vomiting and nausea" being ignored. (Compl. ¶ 41). Not only does the Complaint fail to allege that ignoring these complaints affected Plaintiff's condition, the complaints themselves contradict the condition Plaintiff claims to have. A quadriplegic is defined as "a person who is permanently unable to move or feel [] arms or legs, usually because of a severe injury to the spine." *Quadriplegic*, Cambridge University Press, https://dictionary.cambridge.org/dictionary/english/quadriplegic (last visited Apr. 21, 2022). A quadriplegic would thus be unable to feel weakness in their legs.

With respect to Plaintiff's esophageal condition, the treatments alleged to have been denied include (i) not being given a basin in which to vomit, (ii) stricter monitoring, and (iii) a request for a call bell. Each of these requests is, again, subject to inconsistencies within the four corners of the Complaint. Plaintiff alleges that Dr. Michael Salvana first became concerned when he discovered vomit in a basin on Plaintiff's bedside table. (Compl. ¶ 58). Plaintiff's request for stricter monitoring is at odds with his statement that he is constantly "monitored by camera." (*Id*. ¶ 92). Lastly, Plaintiff admits that even with a call bell, he would not be able to "summon help in any academic way." (*Id*. ¶ 95).

Finally, to the extent Plaintiff complains about cardiovascular ailments, he has not alleged that any delay in treatment had any effect on his condition. Indeed, Plaintiff admits that he received treatment for his cardiovascular condition from multiple specialists. (*Id*. ¶¶ 102, 105). Plaintiff alleges that DOCCS did not provide him with the specific treatments those specialists purportedly prescribed, but auspiciously neglects to plead that DOCCS did not provide him with any cardiovascular treatment at all.

Plaintiff's claims, accordingly, boil down to complaints that he did not receive his preferred method of treatment. "[D]isagreement over the proper treatment does not create a constitutional

claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Chance*, 143 F.3d at 703; *Casanova v. Maldonado*, No. 17-CV-01466, 2021 WL 3621686, at *7 (S.D.N.Y. Aug. 16, 2021) ("[D]isagreement over treatment cannot be the basis for a claim under the Eighth Amendment."); *see also Dinkins v. New York*, No. 19-CV-08447, 2020 WL 5659554, at *9 (S.D.N.Y. Sept. 23, 2020) ("Plaintiff's demand that he should have been referred for surgery is merely a difference of opinion with respect to a course of treatment, which is not actionable under section 1983." (internal quotation marks omitted)); *Portillo v. Webb*, No. 16-CV-04731, 2017 WL 4570374, at *7 (S.D.N.Y. Oct. 11, 2017) ("[T]his is best characterized as a disagreement as to the method of addressing his inability to walk, and thus not grounds for a section 1983 claim."), *adopted by* 2018 WL 481889 (S.D.N.Y. Jan. 17, 2018); *Kalamaras v. Mangano*, No. 16-CV-00459, 2016 WL 4132254, at *9 (E.D.N.Y. Aug. 2, 2016) ("Although Plaintiffs may disagree with the medical treatment provided, such disagreement does not give rise to a deliberate indifference claim.").

Plaintiff's claim for deliberate indifference to a serious medical need thus fails at the objective prong.

### ii.   The Subjective Prong

The second prong, the "subjective prong," requires action "with a sufficiently culpable state of mind." *Morgan*, 956 F.3d at 89 (internal quotation marks omitted). Even if Plaintiff pled the objective element, there is no basis to believe that Defendants acted with the required state of mind. The subjective prong requires that Plaintiff prove "that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed." *Adamson v. Miller*, 808 F. App'x 14, 18 (2d Cir. 2020) (quoting *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017)). "It is not enough to show that

Defendants lacked due care; rather, Plaintiff must establish that the defendants' conduct 'involved obduracy and wantonness in placing [the plaintiff's] health in danger.'" *Boomer*, 2021 WL 1163658, at *4 (quoting *LaBounty v. Coughlin*, 137 F.3d 68, 73 (2d Cir. 1998) (alteration in original)).

Plaintiff complains that he was misdiagnosed because of Defendants' failure to preserve his medical records. (Compl. ¶ 157). Misdiagnosing a condition is not the same as being deliberately indifferent to it; the claims against those Defendants, therefore, fail on the subjective prong as well. *See Whitfield v. O'Connell*, 402 F. App'x 563, 566 (2d Cir. 2010) ("[E]ven assuming that . . . reports suggested that he might be suffering from a urinary tract infection, any failure . . . to properly diagnose this condition would not constitute deliberate indifference, but rather, at worst, medical malpractice."); *Haynes v. City of New York*, No. 19-CV-01925, 2020 WL 4926178, at *11 (S.D.N.Y. Aug. 20, 2020) ("[A]llegations of negligent misdiagnosis . . . do not suggest that the defendant acted with a conscious disregard to inmate health or safety." (internal quotation marks omitted, first alteration added)); *Lainez v. Roycroft*, No. 18-CV-06754, 2019 WL 4934009, at *3 (S.D.N.Y. Oct. 7, 2019) ("[P]laintiff's complaints lack any allegation that his misdiagnosis was caused by anything other than . . . negligence."); *Snyder v. Alam*, No. 15-CV-04033, 2016 WL 2642226, at *4 (S.D.N.Y. May 6, 2016).

Plaintiff's own allegations make clear that he received medical care time and time again and that multiple doctors found that he was not suffering from the conditions he claimed to have. (*See, e.g.*, Compl. ¶¶ 40, 49). That a different doctor, years later, came to a different conclusion, does not render DOCCS staff acting upon the prior diagnosis deliberately indifferent. The conflicting medical diagnoses Plaintiff describes in the Complaint as having been made over time belie themselves. *Dichiara*, 2007 WL at *3 ("If a prisoner's course of treatment is one about which

reasonable doctors could disagree, an Eighth Amendment claim will not ordinarily lie.") DOCCS' continued provision of medical treatment in the form of examinations and special housing, as described in the Complaint, indicate reasonable care to mitigate risk to Plaintiff and do not reflect the culpable state of mind required by the subjective prong of this analysis.

Based upon the foregoing, Plaintiff failed to plead facts supporting either prong of a claim under the Eighth Amendment in connection with his medical care. Any such claims for relief are, consequently, dismissed.

### B.  Failure to Protect Against COVID-19

To state a claim against Defendants for failing to protect from COVID-19, Plaintiff must plead facts supporting the same objective and subjective prongs that show "deliberate indifference." *Edwards v. Black*, No. 20-1677, 2021 WL 1748478, at *1 (2d Cir. May 4, 2021). It is true that "[t]he COVID-19 pandemic has caused an unprecedented health crisis, particularly in houses of detention." *Grant v. Decker*, No. 20-CV-02946, 2020 WL 3402445, at *1 (S.D.N.Y. June 19, 2020).

As this Court has previously acknowledged, "under certain circumstances, an inmate's exposure to COVID-19 could 'pose an unreasonable risk of serious damage to his health,' thereby satisfying the objective prong." *Herbert v. Smith*, No. 20-CV-06348, 2021 WL 3292263 at *9 (S.D.N.Y. Aug. 20, 2021) (quoting *Darnell*, 849 F.3d at 29). Courts have found that inmates may face a substantial risk of serious harm absent adequate measures to counter the spread of COVID-19, as "[i]t is undisputed—and, indeed, by now common knowledge—that COVID-19 is a highly dangerous disease that poses a significant risk of severe illness and death." *Houston v. Capra*, No. 20-CV-02135, 2022 WL 748260, at *8 (S.D.N.Y. Mar. 11, 2022); *see also Petitpas v. Griffin*, No.

20-CV-00769, 2020 WL 6826723, at *6 (D. Conn. Nov. 21, 2020); *Chunn v. Edge*, 465 F. Supp. 3d 168, 200 (E.D.N.Y. 2020) (citing cases).

Plaintiff has not, however, alleged that he was ever exposed to COVID-19, let alone that any such exposure resulted from Defendants' "deliberate indifference." Plaintiff does not allege how, when, where, or for how long he faced a risk of contracting COVID-19, or any facts specific to himself at all. *James v. Annucci*, No. 20-CV-06952, 2021 WL 3367530, at *7 (W.D.N.Y. Aug. 3, 2021) (dismissing "conclusory allegations [that] fail[ed] to allege the subjective component of an Eighth Amendment claim and contain[ed] no amplifying details regarding Defendants' awareness that COVID-19 preventative measures were not being followed" (quoting *McFadden v. Annucci*, No. 18-CV-6684, 2021 WL 463829, at *14 (W.D.N.Y. Feb. 9, 2021))).

Plaintiff has only been housed at Fishkill since the onset of the COVID-19 pandemic. However, he makes conclusory allegations about COVID-19 in "every" DOCCS facility. (*See, e.g.*, Compl. ¶ 119). Moreover, Plaintiff admits that countermeasures *are* taken at DOCCS facilities, including, for example, that prisoners receive misbehavior reports for not wearing masks and that mess hall seating is limited to every other seat. (*Id.* ¶¶ 119, 127); *see also Chunn*, 465 F. Supp. 3d at 200 ("[W]hether a particular danger poses a substantial risk of serious harm in a prison must be evaluated in light of the steps that the facility has already taken to mitigate the danger."); *Herbert*, 2021 WL at *9 (finding that "efforts to manage the spread of the virus" by defendants weighed against a finding of deliberate indifference). Even assuming Defendants' response to COVID-19 was imperfect, or negligent, it is not enough to support a finding of deliberate indifference. *Morgan*, 2022 WL 913188, at *4 (citing *Pike v. Cerliano*, No. 20-CV-0619, 2021 WL 3704377, at *3 (E.D. Tex. Aug. 3, 2021), *adopted by* 2021 WL 3700252 (E.D. Tex. Aug. 19,

2021)). Plaintiff's conclusory allegations involving COVID-19 protocols at "every DOCCS facility" are insufficient to state a claim and are, therefore, dismissed.

### C.   Misbehavior Reports

Plaintiff presses an amorphous constitutional claim in his "second cause of action," complaining that "[e]very court in our nation has held, that a prisoner has a constitutional right to be free from false misbehavior reports." (Compl. ¶ 178). Although Defendants did not address this claim in their motion, and even construing the allegations liberally in deference to a *pro se* plaintiff, the claim is simply without merit. The Second Circuit has held that "a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report." *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997). "There must be more, such as retaliation against the prisoner for exercising a constitutional right." *Id*. There are no allegations here of something "more," and Plaintiff has made no claim for First Amendment retaliation. Moreover, Plaintiff does not claim that his misbehavior reports were "false," only that, had DOCCS sifted through his medical record, he would have had a justification for his misbehavior. Of course, Plaintiff has "a due process right to a hearing before he may be deprived of a liberty interest on the basis of a misbehavior report." *Id*. However, Plaintiff does not allege that he was deprived of such a hearing.

Plaintiff's "second cause of action" is, therefore, dismissed.

### IV.   Failure to State a Claim Under the ADA and the Rehabilitation Act

Plaintiff states that he "also seeks to remedy those rights secured by the ADA Amendments Act of 2008 and the Civil Rights Act of 1973 (Rehab Act)." (Compl. ¶ 1). Plaintiff states that "[t]here are allegations that DOCCS has rescinded previously granted and approved reasonable accommodations approved under the ADA and Rehab Act." (*Id*. ¶ 232). Plaintiff does not specify which accommodations these were or when and how they were rescinded. (*See generally id*.).

Regardless, these claims fail because Plaintiff does not allege that he was discriminated against *because of* his disability, as is required by both statutes. *See Maccharulo v. New York State Dep't of Corr. Servs.*, No. 08-CV-00301, 2010 WL 2899751, at *5 (S.D.N.Y. July 21, 2010) ("[A] claim that does not allege such discriminatory treatment is not a viable claim under [the ADA or Rehabilitation Act]."). Moreover, "[a] challenge to the adequacy of services provided, as opposed to a challenge alleging denial of services provided to non-disabled persons, is not a valid claim under the ADA or the Rehabilitation Act." *Id.* at *4 (citing *Doe v. Pfrommer*, 148 F.3d 73, 82 (2d Cir. 1998)). As discussed herein, Plaintiff does not allege that he was denied services; he instead repeatedly avers to the medical services that he *did* receive. Thus, Plaintiffs claims under the ADA and Rehabilitation Act are dismissed.

V.       Revocation of IFP Status Under 28 U.S.C. § 1915(g)

Title 28 U.S.C. § 1915 provides for federal courts to authorize prisoners to proceed *in forma pauperis*, enabling them to commence suits without the prepayment of fees or security. 28 U.S.C. § 1915(a)(1). Such authorization is not, however, unbridled. Indeed, that same statute provides that:

> [i]n no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). This provision is known colloquially as the "three strikes rule." *Malik v. McGinnis*, 293 F.3d 559, 560 (2d Cir. 2002). It is thus appropriate for a court to dismiss a complaint if it finds that an incarcerated plaintiff had previously brought three or more actions or appeals that were dismissed as frivolous, malicious, or failing to state a claim. *See Carolina v.*

*Rubino*, 644 F. App'x 68 (2d Cir. 2016) (affirming dismissal under 28 U.S.C. § 1915(g) based on plaintiff's three strikes and upholding the constitutionality of § 1915(g)). A plaintiff may, however, avoid dismissal under the three strikes rule if they are in "imminent danger" at the time of filing the complaint. *Malik*, 293 F.3d at 562-563 ("[T]he 'imminent danger' exception only applies to danger existing at the time the complaint is filed."). The Court declines to rule on this portion of Defendants' motion brought under 28 U.S.C. § 1915(g) to revoke Plaintiff's IFP status. Plaintiff failed to state a claim on the merits and the Complaint is being dismissed with prejudice, regardless of whether Plaintiff may proceed IFP. Without taking a position on the applicability of the bar, however, the Court notes that in *Shomo v. DOCCS*, No. 20-583 (2d. Cir. 2020), the Second Circuit held that "Appellant's core claim, that he suffers from paralysis, is flatly contradicted by the record, and [] his other arguments likewise 'lack[] an arguable basis either in law or in fact,'" and in *Shomo v. State of New York*, 07-4162-PR (2d Cir. 2008), held that Plaintiff's appeal "lack[ed] an arguable basis in fact or law." Those decisions are strikes. [5] *Tafari v. Hues*, 473 F.3d 440, 442 (2d Cir. 2007) ("An appeal is frivolous when it lacks an arguable basis either in law or in fact." (internal citation omitted)). Thus, upon the entry of this Order, Plaintiff will have *at least* three, and presumably more, strikes under 28 U.S.C. § 1915(g).

---

[5] The Court takes judicial notice of public records from plaintiff's prior legal proceedings, which involved matters related to Plaintiff's claims here, as well as the applicability of 28 U.S.C. § 1915(g). *See Jackson v. New York State*, 523 F. App'x 67, 68 (2d Cir. 2013) ("Matters subject to judicial notice—such as decisions [in] related proceedings—are properly considered on a motion to dismiss and do not require the court to consider the motion as one for summary judgment.").

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants' motion to dismiss is GRANTED and the Complaint is DISMISSED with prejudice for failure to state a claim. [6]

While "[d]istrict courts should frequently provide leave to amend before dismissing a *pro se* complaint . . . leave to amend is not necessary when it would be futile." *Reed v. Friedman Mgmt. Corp.*, 541 F. App'x 40, 41 (2d Cir. 2013) (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)). The Complaint is dismissed with prejudice because any amendment would be futile.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this Memorandum Opinion and Order would not be taken in good faith. *Cf. Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue). Plaintiff is not otherwise entitled to proceed IFP under 28 U.S.C § 1915(g). IFP status is therefore denied for the purpose of an appeal.

The Clerk of the Court is respectfully directed to terminate the motion sequence pending at Doc. 62, mail a copy of this Memorandum Opinion and Order to Plaintiff, and close this case.

**SO ORDERED:**

Dated:   White Plains, New York
        May 4, 2022

_____
PHILIP M. HALPERN
United States District Judge

---

[6] Given the conclusions reached herein, the Court need not and does not reach Defendants' arguments regarding qualified immunity. (Def. Br. at 16-18). The branch of Defendants' motion seeking revocation of Plaintiff's IFP status is DENIED as moot.